### SMITH v. ST. RAYMOND et al.

#### No. 16451.

Court of Appeal of Louisiana. Orleans.

Nov. 4, 1936.

**380**

Spearing, McClendon, McCabe & Schmidt, of New Orleans, for appellants.

Edward S. Sprio, of New Orleans, for appellee.

McCALEB, Judge.

The plaintiff, a colored woman, alleges that on July 30, 1934, she was occupying a room in the premises 819 Marais street in the city of New Orleans, which had been leased by the defendants to her father, and that part of the plaster attached to the ceiling of her room fell upon her causing her injury. She avers that the plaster struck her on her head, rendering her unconscious, and as a result thereof she was confined to her bed, suffering with headaches and backaches continuously from the date of the accident up to October 18, 1934, the date on which the suit was filed. She further avers that she suffered continuous "female hemorrhages" for a period of 22 days immediately following the time of her injury; that she has been unable to work since that time and she demands recovery from the defendant in damages, which she itemizes to be $1,000 for her physical injuries, $1,000 for pain suffered and shock, $100 for loss of wages, and $6 for medicine, making a total claim of $2,106.

In due course, the defendants answered, and denied all of the averments contained in plaintiff's petition.

The case was heard and the trial court awarded judgment in favor of the plaintiff in the sum of $300, and the defendants have prosecuted this appeal.

In order to substantiate the averments of her petition, the plaintiff tendered the testimony of herself, her mother, and one Harold F. Richards, an insurance collector.

The plaintiff testified that on the date of the accident her insurance agent had called on her for the purpose of collecting premiums due on her insurance policy; that she was in her room and was sitting in front of the dresser when a portion of the ceiling plaster, which is described to be about three feet square, fell upon her, striking her on her head and back. She says that she was knocked unconscious and her mother came to her assistance and put her in bed, and that her insurance agent witnessed the incident. She further relates that she suffered severe headaches; that she remained in bed a month; and that she was treated by one Dr. Faris, who prescribed medicine to alleviate her pain. She further testifies that, in addition to the other injuries described by her, she suffered severe menstrual hemorrhages for 22 days. She did not tell Dr. Faris about these hemorrhages and says that another colored woman prescribed treatment to arrest the flow.

The plaintiff's mother testifies that she was downstairs at the time of the accident, but that, notwithstanding this, she could and did see the plaster fall in plaintiff's room; that the insurance collector was there and he saw it; and that she ran to plaintiff's assistance as soon as plaintiff was struck by the plaster and placed the plaintiff in bed. She corroborates plaintiff's story, as to the extent of plaintiff's injuries, and elaborates upon the suffering which the plaintiff claims to have endured.

On the other hand, the insurance collector, who testified for the plaintiff, denies that he was present at the time the plaster fell from the ceiling. He says that he was climbing the steps for the purpose of collecting the insurance and when he got to the door he saw some dust emanating from within; that he looked inside the room and saw the plaintiff's mother putting the plaintiff in bed. He verifies the fact that the plaster fell from the ceiling, but he contradicts the plaintiff and her mother with reference to their statement that the witness was present at the time the plaster fell upon the plaintiff.

Dr. Henry B. Faris testified for the plaintiff and said that he was summoned to attend her on the day after the accident and found her to be suffering with a bruise on the rear of her head; that this portion of her head was swollen; that he prescribed some medicine to alleviate her pain; and that he made six or seven visits to her house during the following 10 days. The witness further says that the plaintiff at no time complained to him of menstrual hemorrhages and he did not know that she claimed to be suffering from that complaint.

Generally, in these cases, involving injuries to tenants by reason of vices and defects existing in the lessor's premises, the court is compelled to rely entirely upon the plaintiff's evidence, for the reason that the plaintiff and his witnesses are the only persons present when the accident occurs. Because of this fact, the evidence tendered by the plaintiff should be scrutinized with utmost care in order to avert consequences which might unduly encourage the prosecution of fictitious claims.

It is apparent, in the case at bar, that plaintiff's testimony is in conflict with that of other witnesses produced by her, sufficiently so to create some doubt in our minds as to the sincerity of her claim. On the other hand, the judge of the district court saw and heard the witnesses testify and he evidently believed that the plaintiff suffered some injury because he gave judgment in her favor for the sum of $300. While we feel that he was correct in finding for the plaintiff, we are also convinced that the amount of his allowance was excessive.

Our appreciation of the evidence is that the plaster fell, striking plaintiff on the head, and she received a small contusion or bruise on her head as result thereof. She says that she was in bed for one month. However, we believe that she was feigning illness during most of that period in the hope that her confinement would result in conveying the impression that she was more seriously hurt than was actually the case. Her own doctor does not seem to think there was anything the matter with her, except that she sustained a small contusion on her head.

In view of all of the circumstances of the case, we believe that an allowance of $100 for the plaintiff's pain and suffering would be ample.

According to her petition, she was earning $5 per week at the time she was injured. Because of Dr. Faris' testimony that he visited her six or seven times within 10 days after the accident, we feel that an allowance for 2 weeks' wages at $5 per week, or the sum of $10, would fully compensate her for the actual wages she lost as a result of her injury.

For the reasons assigned, the judgment appealed from is amended by reducing the amount awarded plaintiff to $110, and as thus amended it is affirmed. Plaintiff to pay the costs of appeal.

Amended and affirmed.