BLANCHE, Judge.
This is a suit for personal injuries and medical expenses by plaintiffs against their landlord. Mrs. Norma Lee Ragusa’s version of the manner in which the accident occurred is as follows. On March 22, 1968, she awoke around eight or eight-thirty in the morning and immediately thereafter walked toward the front of the house to see if her children had caught the school bus. As she walked into the living room, she slipped on the floor which was wet and slippery. The wet condition of the floor was a result of a leak in the roof which she claims the defendants negligently failed to repair. After the fall she began to experience pain in her lower back and thereafter went to Dr. Vance Byars who put her in the hospital where she stayed five days. She has continued to suffer pain in her back since the date of the accident. Mrs. Ragusa seeks damages for her personal injuries, and her husband Joseph Ragusa seeks recovery of medical expenses. The defendants filed a general denial and alternatively pled contributory negligence on the part of Mrs. Ragusa. The trial judge dismissed plaintiffs’ suit at their costs and they have appealed. We affirm.
The disposition of this case rests upon the factual determination of the trial judge, who concluded that plaintiffs had failed to establish their case by a preponderance of the evidence. We find no error in his determination of facts and quote approvingly from the trial judge’s opinion:
“Plaintiff Norma Lee Ragusa alleges that she arose on the morning of March 22, 1968, started for the kitchen and as she crossed the living room she slipped, causing the injuries complained of. This house consisted of three bedrooms and a bath upstairs plus the usual rooms downstairs. The alleged injury occurred in the living room downstairs.
“Mrs. Ragusa stated that the living room floor was covered with water. She stated that a few hours later she went to see Dr. Vance Byars, a general practitioner in East Baton Rouge Parish. Dr. Byars testified that she complained of slipping on a wet floor in the living room and developing back pains. He sent her to a hospital for X-rays and determined that she had congenital back problems and admitted her to the hospital. She was released from the hospital on March 27, 1968.
“Treatment in the hospital consisted of tractions, analgesics and ultra sound. The doctor saw his patient making certain motions in walking, et cetera, which were not compatible with her complaints. He felt on the day he released her from the hospital that she was markedly improved, however, she wanted to stay in *558 the hospital. He found no muscle spasm and stated the only evidence of back injury was her complaint. There were no bruises. He felt that if her back was injured that she should have been fully recovered within two weeks. His bill was [sic] treatment was $49.00. However, the doctor did state that since Mrs. Ra-gusa was obese that it is difficult to determine such things as muscle spasms.
“Both of plaintiffs’ children testified. A daughter testified that she went into the living room and found her mother on the floor, and that there were two leaks in the living room. The son who is twelve years old testified that he heard his mother fall, went into the living room, and that he noticed two leaks in the room.
“Miss Brenda Hebert, a neighbor, testified that she knew the plaintiff and had heard the plaintiff complain that the roof leaked ruining some clothes, and that she was going to a lawyer to sue for the clothes and furniture. She also heard her complaining on one occasion prior to the accident concerning back trouble. She testified that about three weeks before the accident Mrs. Ragusa’s daughter came to her home late one night and used the telephone to call her husband to inform him that Mrs. Ragusa was having bad back pain.
“Mrs. Guitreaux, who also was a neighbor, testified that she never heard Mrs. Ragusa complain of any back pain following the accident, and that she saw the plaintiff in the back yard a few days after she was released from the hospital with an armload of clothes, and that she observed her bending over to pick up items which she had dropped to the ground.
“Mr. Homer Chisholm testified that he and his wife owned the house where the alleged accident occurred, and that a slate roof was put on the house when the house was built. Mrs. Chisholm stated that she first learned of a leak in the roof before the accident, that she contacted Tip Top Roofing Company and had them repair it. She stated that it would be necessary to have a very strong wind before water would come into the house. She also testified that shortly before the alleged accident that she had notified Mrs. Ragusa that she wanted Mr. and Mrs. Ragusa to vacate the premises. And she further testified that Mrs. Ragusa told her on several occasions that she had a bad back, all of these occasions being prior to the accident.
“She recalled that in December, 1967 or January, 1968, that the plaintiff told her that she had slipped and almost hurt herself while cleaning the house. She stated that when she was informed of the accident she went to the residence and found moisture on the floor as though the floor had been mopped.
“It was further the testimony of Mrs. Chisholm that four days before the alleged accident that she went to the Ra-gusas’ house with the contract that she had entered into for a complete new roof, warned Mrs. Ragusa and her family to be careful, and that plaintiff told her that the roof only leaked when a strong wind blew. Mrs. Chisholm had her son examine the attic and the ceiling and he was unable to find any moisture.
“The Court is unable to determine from the evidence as to how any moisture accummulated [sic] on the living room floor. It would seem unlikely that water would come from the roof through the second floor down to the first floor without showing any evidence of leaking in the ceilings or in the upstairs rooms, unless the water came down through the supporting walls which would run from the roof to the ground floor. This wa *559 ter could have been the result of a leak in the plumbing rather than from the outside weather. There was no evidence that there was any storm the night before the accident, although on the day of the accident it was misting rain and had snowed earlier.” (Reasons for Judgment, Record, pp. 26 through 29)
It is obvious that the trial judge did not believe the plaintiffs, and for that reason they failed to carry the burden of proof. In Bussey v. Trew, 2 So.2d 495 (La.App. 2nd Cir. 1941), the plaintiff fell through a hole in the kitchen floor and sued the defendant-landlord for his personal injuries. There it was shown that plaintiff was behind in his rent and had been ordered to vacate the premises. A witness who lived in an adjoining apartment testified that she heard the plaintiff state that if the defendant did not “handle him with kid gloves” he would soon own the apartment. In disposing of the case, the Court stated:
“In the case of Smith v. St. Raymond et al., La.App., 170 So. 379, 381, the Court said: ‘Generally, in these cases, involving injuries to tenants by reason of vices and defects existing in the lessor’s premises, the court is compelled to rely entirely upon the plaintiff’s evidence, for the reason that the plaintiff and his witnesses are the only persons present when the accident occurs. Because of this fact, the evidence tendered by the plaintiff should be scrutinized with utmost care in order to avert consequences which might unduly encourage the prosecution of fictitious claims.’
“The soundness of this rule cannot be questioned and certainly the evidence offered in this case by plaintiff and his witnesses will not bear close scrutiny.” (Bussey v. Trew, 2 So.2d 495, at 498, 499)
The judgment of the trial court is correct and is affirmed at appellants’ costs.
Affirmed.